The court will call the next case. United States v. Donte Kent. You may proceed, Mr. Hanson. Good morning. May it please the court, Mr. Tremblay. The district court erroneously sentenced Donte Kent as a career offender, predicated on his finding that the Iowa offense of interference with official acts inflicting bodily injury constitutes a crime of violence under the sentencing guidelines. As an alternative basis for affirmance, the government is arguing that the district court erred by finding that a separate Iowa offense is not a crime of violence under the sentencing guidelines, that being second offense domestic abuse assault. I'll start first with the question of interference with official acts inflicting bodily injury. The crime at issue is an aggravated form of the misdemeanor Iowa offense of interference with official acts under Code Section 719.1. The basic crime of interference with official acts occurs when an offender knowingly resists or obstructs someone known to be a peace officer. Now that crime in and of itself is not a crime of violence. For one, it's a misdemeanor, as I said. But second, it's a crime that can be committed with no force whatsoever. As this court made clear in the case of Lawyer v. City of Council Bluffs, where it found probable cause existed to arrest under Section 719.1, where an offender verbally encouraged someone else to resist an officer's instructions. The trickier question is with respect to the aggravated offense under, at the time of Mr. Kent's predicate conviction, 719.1 subsection 1D, now subsection 1E, and that is the offense that occurs when an offender, in the course of committing the crime of interference with official acts, the statutory language is, in doing so inflicts bodily injury other than serious injury. The question for this court is whether that crime involves the requisite degree of force to constitute a crime of violence. Now, the district court relied on a 2010 opinion of this case in the Malloy case, which held that this crime is a crime of violence. Since then, the Supreme Court has decided the Borden case, which held the crimes involving a reckless application of force are not violent, so the question now is whether Malloy has been abrogated by the Borden case, and, of course, Mr. Kent's argument is that it has been. Note for the record, it's a different spelling of Malloy. That's why I said the Malloy case. So, as I said, in Borden, the Supreme Court held that reckless crimes, or crimes that involve a reckless application of force, are not violent, so the question is whether 719.1 subsection 1D, now 1E, could be committed through the reckless application of force. And if you were to summarize Mr. Kent's argument altogether, it is that when the statutory term inflicts does not carry a modifier either before or after it, it necessarily encompasses recklessness. In other words, if the term inflicts in a statute, it could mean reckless infliction of bodily harm or force. The way we know that is if we look at other provisions of the Iowa Code, really only a few pages away from section 719.1. The best example is the Iowa statute for first-degree burglary. That's 713.3 subsection 1C, and that statute says that when an individual commits a burglary and intentionally or recklessly inflicts bodily injury, it becomes a first-degree burglary, the most serious form of burglary. And Mr. Kent's argument is that because the Iowa legislature used the term recklessly before inflicts in the burglary statute, that's a recognition that in some instances, inflicts can encompass recklessness. Now the government's response to this in its brief is that, well, the fact that the Iowa legislature used reckless in the burglary statute is an indication that if it intended for it to apply to 719.1, it would have said so. But I read intentionally and recklessly in the burglary statute as limiting, limiting the forms of mens rea that count for first-degree burglary to intentional and reckless. And of course, that's not the... Let's just step back just a moment. We talk about active interference is what the Iowa Supreme Court says we need here, and that sounds an awful lot like active employment of force to me as used in Borden, right? Which doesn't answer the reckless question, just tells that there's some force that's involved. And then we get to the point, can it be committed intentionally? And really, my problem as I look at it, is really the three Iowa intermediate appellate court opinions, because they seem to be somewhat at odds, right? Because if you were to look at Dudley, it seems to tell you that there's an intentional directed action, and that sounds like you can't do that recklessly, right? That, to me. Then we get to Kerry, which seems like it sort of backs off from that, and it talks about that you don't have to prove that they specifically intended the injury, but rather that they intended to engage in the struggle. And that sounds more like that might encompass recklessness, right? And then at the end, you've got Jackson, where they kind of come back, and it sounds more like the Iowa courts are really requiring some intentional act. And so are there any Iowa cases out there where you can really look at there's been somebody convicted of this aggravated crime when they were really just engaging in kind of this reckless struggle that it really would apply? The best case Mr. Kent has is Kerry, because there is a language in there about how there was a struggle and how in order to be convicted for interference with official acts inflicting bodily injury, there does not have to be proof of intent to harm the officer. Now, it doesn't directly address the question of recklessness, and I can see that the other two Iowa cases are not helpful to Mr. Kent. But what we have are unpublished Iowa Court of Appeals decisions. Yeah, that is sort of a problem now, isn't it? Well, not for you, I mean, for the government, right? Because what precedential value can we really give to these things as we're trying to read tea leaves as to whether or not one can actually be convicted under Iowa law recklessly under this statute. Right. It's Mr. Kent's position that we don't even need to get into the survey of Iowa law to get to the point where he wins on this question, because there's a line of cases from this court saying if you can establish the realistic probability from the statutory language itself, that's sufficient. And the language, to me, is clear enough, especially when you compare it to first-degree burglary, to suggest that reckless is a part of the statute. The other issue that is related but somewhat separate, if you look at the Borden case, one of the reasons why the Supreme Court reasoned that reckless crimes are not violent is the specific statutory language of the ACCA, which is the same as the guideline provision at issue here. The Supreme Court reasoned that for force to be violent, it has to be against the person of another. And reckless force isn't necessarily against the person of another. It's not necessarily directed at the person of another, notwithstanding the Iowa Court of Appeals cases. If you look at the plain text again of the subsection at issue, although there is a requirement for the basic crime of interference with official acts, that the conduct has to be knowingly directed at the officer, there's no requirement that the infliction of bodily injury has to be to the officer. In other words, the innocent bystander issue is existent here, where you could have an offender who's knowingly resisting an officer, knowingly obstructing an officer, and in the course of doing that, in doing so, recklessly inflicts bodily harm on a third-party bystander. One example would be if the defendant was resisting arrest and runs away, and that's a reckless act, obviously, to run away, and runs into an innocent bystander, isn't intending to do so. Now, that would be reckless, and I agree there's no Iowa case on point saying that that is encompassed by the statute, but the plain language would suggest that it is. So there's two reasons there, and I also want to point out the Iowa assault statutes. This is essentially the contra of the government's point with regard to first-degree burglary. Our position is if the Iowa legislature had wanted to limit infliction to the intentional infliction of injury in 719.1, it could have been much clearer about that, because if you look at some of the Iowa assault statutes, you see the language with the intent to inflict a serious injury or with the intent to inflict a bodily injury. Well, just to follow up on that, do you think if a defendant flees from arrest, and let's say does an automobile, drives away at a high rate of speed, reckless driving, crashes into another car and seriously injures somebody, do you think they could be prosecuted under the statute? As a matter of the text, yes, absolutely. But there isn't a case in Iowa, you haven't found a case in Iowa that actually, well, let me ask this, would that scenario fit under a different statute, as far as you know? Well, I imagine it would fit under some form of evading arrest or perhaps a reckless assault as well, but it certainly seems to fit most closely with 719.1. Well, is it an interference with official acts sort of directed at evading arrest? Yeah, it can be. It can be applied in that way, and it certainly is. It's certainly applied in the instance where somebody is resisting arrest, so it could be applied in the circumstance where someone's evading arrest. The term obstructing is interpreted very broadly in the statute, so it can apply in a number of different situations. If the court has no more questions about the interference with official acts statute, I'll move quickly to the issue of the second offense, domestic abuse assault, under code section 708.2a, subsection 3b. In this instance, we have the benefit of a well-reasoned written opinion from the district court in a previous case dealing with the very same statute, and I'd ask the court to essentially affirm what the district court reasoned with respect to this statute. The overall problem with the government's argument comes with divisibility. This court in, so Iowa's assault statutes are very complicated and frustrating, I would say, for practitioners, but you have to look first to the general assault statute under Iowa code section 708.1, and then look to the second statute that's cited in each case. 708.1, contrary to the government's argument, is indivisible, and it's over-inclusive because it encompasses the threat of contact that may be insulting or offensive, obviously contact that does not involve any force. Quigley is binding on this point, has not been superseded by any subsequent decision. So then, like Quigley, you have to move to the second statute and ask whether that adds an element that would suggest that it's a crime of violence. Again, here we're going to 708.2A, subsection 3B. That is essentially an aggravating element for someone who has a prior conviction for domestic abuse assault. The government is inviting the court to look to Mr. Kent's written plea of guilty to determine the conduct that was at issue in the second offense, and then assign another statutory provision to that. But Judge Williams is right in the free case that you can't do that because 708.2A, subsection 3B, is indivisible as well, and it spells out myriad different means by which the second offense, domestic abuse assault, can become an aggravated misdemeanor, and you can't go to the underlying conduct and can't look to the Shepard documents to figure out what exactly the defendant did. If the court has no further questions, I'd reserve the reign of my time for rebuttal. You may. Thank you. Mr. Tremel, when you're ready. May it please the court. Mr. Hanson, Mark Tremel, Assistant U.S. Attorney, Cedar Rapids, Iowa. Starting with the interference of the official acts, in 719.1, there are two subsections dealing with bodily injury. B, 1B, is which results in bodily injury. That's a serious misdemeanor. That was added in 2013, shortly before the incident in this case. 1D is inflicts bodily injury other than serious injury. That's an aggravated misdemeanor. That's an issue in this case. In the district court, there was a defendant made an argument that it was unclear which of those it was. That's not being made on appeal. The parties agree that it's 1D for inflicting. Defense cites Hawksworth. The Hawksworth Texas assault statute was different. Hawksworth was intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. Two differences, big differences here. One is there is not the specific word recklessly. The other is the word inflicts instead of the word causes. Those are two differences between this and the statute in Hawksworth. As the Malloy court said, inflict requires aggressive action. That is consistent with the Iowa case law. As the court has noted, there are some differences between the three unpublished opinions. The Jackson opinion, the last of those, talked about intentional action directed at the officer not an innocent bystander, directed at the officer and directly causing an injury. Dudley is pretty similar to that, although Jackson adds to that and says not proximately, directly causing an injury. Kerry said it must be an intentional act, but the defendant does not need to specifically intend to cause the injury. So it's not a specific intent crime. That's consistent with Iowa law, the Buchanan case, that interference is a general intent crime. But I would say this as well. In Kerry, there was a quotation from the district court. The district court said an intentional act was the causative factor, kind of dealing with this intent issue. Then the appeals court quoted the district court with approval that we agree with that. I don't know to what extent that matters, that it's the appeals court quoting the district court. There is some inconsistency in the language, but two out of the three cases, intentional, directed, and directly caused the injury. That's consistent with Malloy. Mr. Hanson, did you have a question? I just have a question on the unpublished nature of these three opinions. I just am unfamiliar with what Iowa procedural law as to unpublished intermediate court appeals opinions have for precedential value. Well, they don't have precedential, so they're persuasive. There's none at all. Yeah, that's correct, Your Honor. We look at them to see how courts have addressed these issues under certain scenarios. Sometimes they've addressed this aspect of a defense argument, other times they haven't. It's tough to look at any one of those and obviously get a definitive answer on what Iowa law is. As counsel noted, our argument on the burglary is the legislature can specifically choose that in a burglary for the first degree burglary to include a recklessness requirement. That doesn't mean that inflict means reckless when it does not include it, and I think that's too much to infer from one statute. So we think Malloy is consistent with Iowa law. It's consistent with the idea that inflicts in 1D is more specific than results in 1B. Regarding the Iowa assault statute, first argument is that 708.1 is divisible. There are three cases post-Mathis that are published, Gaines, Golenvoe, and Quigley. I'd like to address a couple of things to correct a couple of things in the defendant's reply brief. One is regarding 708.1, the State of the District Court in Free correctly held that the holding in Quigley is binding. The second thing is Gaines accepted for purposes of that case the party's agreement that 708.1 was divisible. Quigley, however, rejected a similar agreement of the parties and concluded that the statute is indivisible. That's the defense argument. We would disagree with both of those. First of all, the divisibility of 708.1 was not a significant contested issue in any of those three cases. In Gaines, both parties agreed that 708.1 was divisible. In Golenvoe, the government argued 708.1 was divisible and the defense and the petitioner didn't dispute that. In Quigley, the holding was based on 708.2 sub 1, not on 708.1. The parties agreed, this was their agreement, they agreed that 708.2 sub 1 was divisible. The court rejected that. In that case, the defense actually contended that 708.1 was divisible. The government's focus was on 708.2, but regarding 708.1, the government's brief said, 708.1 simply lists alternative means by which to satisfy the definitional requirement of assault. And we quote that on our brief on page 25. So this court in Quigley, consistent with the government's brief statement there, said the alternatives in 708.1 were means. That was the statement. The holding was that 708.2 sub 1, assault with intent to inflict serious injury was a crime of violence. That holding was based on the realistic probability analysis. And so the one sentence in there stating that alternatives in 708.1 are means was not a holding, it's not binding. Obviously, if this court finds that 708.1 is not divisible, then we can't look at Shepard documents. If the court finds 708.1 is divisible, then as in Gaines and Golenville, the court should look at the Shepard documents. In this case, plea agreement, exhibit number three, paragraph 12, the defendant having assaulted my domestic partner causing bodily injury. Under Gaines, which was similar, hitting the victim around the head or the neck, the assault would fall under the first subsection of 708.1. So that's a correction to a couple of the things in the reply brief on that issue. Second issue with Iowa assault statute is the causing bodily injury component. That is in 708.2A. The same Shepard document we just cited supports this. The reply brief argues, and the defendant argued today, 708.2A, sub 3, sub B, clearly is not divisible. And he puts a chart in the brief regarding the sentencing for a second offense. This is a sentencing enhancement provision. 708.2A, sub 3, sub B, basically says if your first offense is this kind of assault and your second offense is this kind of assault, then it's an aggravated misdemeanor. This involves sentencing enhancements that a judge would determine. It's not a jury issue where different jury members could split on how to prove an element. Third point I would make is our third argument on the Iowa assault is the realistic probability argument under Dwayne Esalvarez. This is an argument where Gaines and Quigley both ended up having a similar analysis. There was a case called Chapman, unpublished opinion, that said it found it was a generic aggravated assault where it was an assault with intent to commit serious injury. And even though the definition of serious injury includes disabling mental illness, found there wasn't a realistic probability it would be applied in a way that didn't qualify. Quigley didn't address the generic aggravated assault, didn't address the force clause, and also found that there was not a realistic probability. So really for this argument it comes down to Dwayne Esalvarez, do you apply the realistic probability test here? There's a case called, this circuit called Gonzales versus Wilkinson, an immigration removal case, did not apply the realistic probability analysis. We would argue it still is alive and well for assault cases. If you look at the Tinlin case, which was after Wilkinson, this court still applied the realistic probability analysis to an assault conviction. So we believe under the realistic probability analysis as well. Well, you've gone through a lot of sections and I'm starting to lose my train here, but the bottom line it seems to me is that under the Iowa second offense domestic assault statute, you can be convicted of that crime by committing a simple assault, provided the prior assault was an aggravated misdemeanor. So why does, so if you can, and I think everybody agrees, a simple assault is not a crime of violence. That's correct, Your Honor. So why the fact that you can commit it, that crime by committing only a simple assault, why doesn't it take it out of the crime of violence? Okay, first of all I would back up when simple assault is not a crime of violence. If it's not divisible and if we have no Shepard documents, simple assault could be under the second subsection, which is not, you've got three subsections, the first and third qualify, the second does not. So if you've got nothing dividing them up, then the second would qualify. Our argument is that the record is, our record is pretty clear here from that, in fact the documents show that the second offense that was a causing bodily injury. So the question is, what the defense is arguing is that this is actually a Mathis elements issue when it's a sentencing enhancement. So you look at Mathis burglary, a jury could split on whether, you know, there was facts supporting this element of burglary or that element of burglary. But here it's not a jury splitting on elements, it's a judge making a legal determination as to is this an aggravated misdemeanor based on a prior offense. It's like if you had an OWI third offense and you had to look at the first. Are you sure about that, that the judge makes that determination? Yes, Your Honor. There's nothing I'm aware of that would allow a jury to make a determination on the nature of the prior. I think the jury gets to... The Iowa requires the jury, as I recall, and I may be getting out on a limb here, but my recollection is, for instance, if you're talking about second or third offense DWI, which is, you know, easy to prove one way or the other, but the jury still has to make that determination that he or she has two prior DWIs. Yeah, jury doesn't make the legal determination of what qualifies. Jury has to determine that John Smith was convicted of OWI and he's the same John Smith who was convicted before. Does the jury have to decide if the person's previously been convicted of an aggravated assault, domestic abuse? No, Your Honor. I'm aware of no authority saying that a jury makes what is basically a sentencing enhancement decision. Now, I think if the defendant were convicted, let's say the defendant disputed and there was a bifurcated... I'm not sure on this point. In an OWI case, you could have a bifurcated trial. So you have a trial on the OWI and then you can have a second part of the trial as, was John Smith the person who was convicted of this offense? And then you'd have to bring in fingerprint cards or other things to prove that up. Was he the same person? Okay. But I think that's a different issue from a judge taking a look at this and deciding what combination of offenses would apply here. But, Your Honor, I don't... have any cases at all addressing that specific issue. If there are no other questions, we would ask that the district court be affirmed. Thank you. Mr. Hanson. I'll start first with the issue of interference with official acts. Mr. Tremble has pointed out that the Iowa Code Section 719.1 contains provisions that apply if an injury results from interference with official acts. And I'd agree there is a distinction between results from and inflicts, but the difference is not significant to the outcome in this case. Results is the language of strict liability. Something can result from an action that you take and you don't intend it at all and you're not even negligent. Infliction does have the connotation of some degree of mens rea. It's the mens rea, though, that includes recklessness. We all took torts class, and we probably remember the tort of negligent infliction of emotional distress. Infliction means at least negligence. So there can be a distinction between results, there can be a distinction between cause, and there can be a distinction between inflicts. It doesn't mean that you can't inflict an injury recklessly. Now, with respect to the assault issue, Judge Malauulu, I think you had it exactly right. In this case, Mr. Kent pled guilty to the assault at issue, and you can imagine the plea colloquy. We don't have the evidence of what exactly happened, but all that would need to be acknowledged is, Mr. Kent, do you have a prior conviction for a serious or an aggravated misdemeanor domestic? Yes. And he did, if you look at his pre-sentence report. Well, would you acknowledge that the second offense would have at least been a simple misdemeanor? Yes. You're guilty of the aggravated misdemeanor under 708.2a subsection 3b. So that's the minimum of what would have to be admitted because the statute is indivisible. That means it's over-inclusive. Respectfully, I disagree with Mr. Tremwell on the importance of Quigley and its interpretation of 708.1. I think if you just look at 708.1, it has all the hallmarks of an indivisible statute. Those are different means and different ways that you can commit the same crime of assault. It makes no difference as far as your punishment, whether you threatened insulting contact or something worse, and it's clearly indivisible. But Quigley did reject the party's concession that it was divisible and said 708.1 is indivisible. And it's necessary for any analysis of any assault, any Iowa assault crime, to consider 708.1. And, of course, the district court in this case, well, the district court in Free, which had followed its decision in this case, said, I find Quigley to be binding on this score. So if there are no further questions, I'd ask the court to reverse the district court and remand for resentencing. Thank you. Thank you. Thank you very much for your helpful arguments and briefing. The case will be taken under advisement.